IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STANLEY BOIM, individually and as Administrator of the Estate of DAVID BOIM, Deceased, and JOYCE BOIM<br><br>Plaintiffs,<br><br>v.<br><br>OFFICE OF FOREIGN ASSETS CONTROL, UNITED STATES DEPARTMENT OF THE TREASURY<br><br>Defendant. | Civil Action No. 1:04-CV-793 (JDB) |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS AND IN OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION**

**INTRODUCTION**

Defendant's Memorandum in Support of its Motion to Dismiss and in Opposition to Plaintiffs' Motion for Preliminary Injunction ("Def. Memo.") (Doc. #5 ) established that plaintiffs' request for preliminary injunctive relief must be denied and this action dismissed because, for two reasons, the Court does not have jurisdiction to hear this case. First, plaintiffs do not have standing to maintain the present action because they have not secured a final judgment for monetary damages against the Holy Land Foundation for Relief and Development ("HLF"), thus they lack any cognizable legal interest in HLF's property. Second, plaintiffs' claims are not ripe because defendant Office of Foreign Assets Control ("OFAC") has not taken any action that infringes on plaintiffs' legal rights.

In their Reply Memorandum ("Pls. Reply Memo.") (Doc # 7), plaintiffs do not contest

either of the factual bases for these two conclusions. Although plaintiffs contend that they will suffer an "injury-in-fact" sufficient to establish Article III standing if HLF's assets are released to the Ungars or another competing litigant, plaintiffs lack a legal right to HLF's property because they do not have a judgment for monetary damages against HLF. The absence of a legal interest in HLF's property cannot be overemphasized: without a legal interest in HLF's property, plaintiffs will suffer no injury in the event HLF's assets are released to another party. The fact that plaintiffs are proceeding to trial after surviving a motion to dismiss is irrelevant. Plaintiffs do not have a judgment against HLF or an interest in HLF's property at the present time, and any claim that they will have such an interest in the future is pure conjecture.

Plaintiffs' response to OFAC's ripeness argument is similarly unpersuasive. Plaintiffs argue that the legal issues presented in this case would not benefit from a more concrete setting. This argument, however, ignores the fact that OFAC has not taken any action to harm plaintiffs' legal rights. Absent such action by OFAC, plaintiffs' suit is nothing more than a request for the Court to issue an advisory opinion about the legality of hypothetical future OFAC action that has no impact on plaintiffs' present legal interests.

In addition to standing and ripeness problems, plaintiffs also have failed to state a claim upon which relief can be granted, or to identify any statutory provision that waives the sovereign immunity of an agency of the federal government from this suit. In their Reply Memorandum, plaintiffs disclaim any reliance on the Administrative Procedure Act ("APA") – which includes a waiver of sovereign immunity in certain instances – and instead, insist that their complaint invokes only two sources of law as a basis for relief: "TRIA and the federal mandamus provision (28 U.S.C. § 1361)." <u>See</u> Pls. Reply Memo., p. 6. Neither of these statutes provides plaintiffs

with a proper cause of action in this case.  First, section 201(a) of TRIA neither contains an explicit waiver of the sovereign's immunity nor does it create a private right of action.  Second, plaintiffs have not established the requisite elements for a writ of mandamus against OFAC.

Finally, even assuming plaintiffs have jurisdiction and a cause of action to present their claims, plaintiffs have failed to establish that they are legally entitled to the injunctive relief requested in their complaint and motion for preliminary injunction.  Plaintiffs request that the Court enjoin OFAC "from releasing or disbursing any of the blocked assets of HLF to any person other than one who is seeking execution of a judgment entered against HLF."  See Complaint, p. 7.  Plaintiffs' sole legal basis for this relief is the allegation that OFAC will violate section 201(a) of the Terrorism Risk Insurance Act ("TRIA") if HLF's funds are released to persons who do not have an in personam judgment against HLF.  See id., ¶¶ 15, 21.  Plaintiffs, however, continue to ignore TRIA's plain language, which unambiguously provides that persons with judgments against terrorist parties may satisfy their judgments by attaching the blocked assets of the terrorist party against whom they have an in personam judgment or "any agency or instrumentality of that terrorist party."  See 116 Stat. 2337, TRIA § 201(a).

For these reasons, as elaborated below, OFAC's motion to dismiss should be granted and plaintiffs' motion for preliminary injunction should be denied.

## ARGUMENT

**I.      Plaintiffs Lack Standing Because They Do Not Have A Final Judgment For Monetary Damages Against HLF.**

Plaintiffs lack standing because they do not have a legally cognizable interest in HLF's property.  "To qualify as a party with standing to litigate, a person must show, *first and foremost,*

*an invasion of a legally protected interest* that is concrete and particularized and actual or imminent." Arizonans for Official English v. Arizona, 520 U.S. 43, 64 (1997) (citations and internal punctuation omitted) (emphasis added). Plaintiffs have not met this standard because they do not have a judgment against HLF and, therefore, lack any legal interest in HLF's property. Accordingly, plaintiffs will not suffer a "concrete or particularized" injury in the event HLF's funds are transferred to the Ungars or another competing litigant.

In their Reply Memorandum, plaintiffs do not dispute the conclusion that they lack a legally protected interest in HLF's property. Instead, plaintiffs contend that they have established an injury-in-fact because they have survived a motion to dismiss and are nearing trial after a period of contested discovery. See Pls. Reply Memo., p. 5. Neither of these two events, however, provides plaintiffs with a legally vested interest in HLF's property such that the transfer of these funds to a competing litigant will cause plaintiffs concrete or particularized harm. Indeed, the mere filing of a cause of action for damages cannot provide plaintiffs with a vested interest in the HLF's property. The very purpose of seeking a civil judgment against HLF is to obtain a judicial determination of HLF's liability. Prior to obtaining a judgment, however, plaintiffs merely have an expectation of recovery that is contingent upon the occurrence of future events, and such an expectation does not rise to the level of a vested property right that is sufficient to establish Article III standing.[1]  Cf. Northern Plains Resource Council v. Lujan, 874

---

[1] Although plaintiffs' rely on Village of Bensenville v. FAA, 376 F.3d 1114 (D.C. Cir. 2004), for the proposition that they have established an injury-in-fact, this decision is distinguishable on its facts. In Bensenville, the FAA imposed a $4.50 facility fee on all passengers emplaning at O'Hare International Airport. In response, three Chicago suburbs filed suit against the fee increase, alleging injury because their officers and employees would bear the cost of this fee. The D.C. Circuit held that "[h]aving to pay the passenger facility fee every time an officer or employee emplanes at O'Hare is a legally cognizable injury." Id. at 1119. Unlike

F.2d 661, 667 (9th Cir. 1989) (holding that appellants lack "standing to challenge [the Secretary of the] Interior's grant of a land patent because appellants do not and cannot assert any legal property interest in the land at issue"); Hawaii Motor Sports Center v. Babbitt, 125 F. Supp. 2d 1041, 1049-50 (D. Haw. 2000) (holding that plaintiff lacked standing to challenge the federal government's transfer of certain property to the State of Hawaii because plaintiff had no legally protected interest in the transferred property); In re Dow Corning Corp., 198 B.R. 214, 234 (Bankr. E.D. Mich. 1999) (explaining that a tort claimant does not have a property interest in a tortfeasor's property until the claimant has reduced his or her claim to a judgment against the tortfeasor).

At most, plaintiffs have alleged a "conjectural or hypothetical" injury that is predicated entirely on the outcome of their pending suit for damages against HLF.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (explaining that an alleged injury-in-fact cannot be "conjectural or hypothetical"); see United Transp. Union v. ICC, 891 F.2d 908, 912 (D.C. Cir. 1989) ("When considering any chain of allegations for standing purposes, we may reject as overly speculative those links which are predictions of future events (especially future actions to be taken by third parties) . . . .").  Indeed, the conjectural nature of plaintiffs' alleged injury is illustrated by the fact that there exists the very real possibility that any relief granted by the Court—assuming the were Court to grant plaintiffs' requested relief—would have no impact on

---

the present case, the suburbs subject to the fee increase had a legally cognizable interest in their own property because they bore "the cost of their officers' and employees' use of O'Hare for business."  Id.  Consequently, the suburbs suffered an injury every time their employees were forced to pay the fee.  Here, plaintiffs have not established a legally cognizable interest in HLF's property such that they will suffer an injury if HLF's property is transferred to the Ungars or a competing litigant.

plaintiffs' rights at the present time and could be rendered meaningless if plaintiffs do not prevail in their action for damages against HLF.  See, e.g., Preiser v. Newkirk, 422 U.S. 395, 401 (1975) (explaining that federal courts do not have the power "to decide questions that cannot affect the rights of litigants in the case before them").

In sum, plaintiffs have failed to establish an injury-in-fact because they do not have a final judgment for monetary damages against HLF.  Accordingly, plaintiffs lack any cognizable legal interest in HLF's property and will not suffer a concrete or particularized injury in the event HLF's property is transferred to the Ungars or another party.  For these reasons, plaintiffs do not have standing and this action should be dismissed for lack of jurisdiction.

## II.     Plaintiffs' Claims Are Not Ripe Because OFAC Has Not Taken Any Action That Adversely Impacts Plaintiffs' Rights.

The absence of a present legal interest in HLF's property also reveals another reason why this action should be dismissed:  plaintiffs' claims are not ripe.  To determine whether a case is ripe for review, the Court must "evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration."  Texas v. United States, 523 U.S. 296, 301 (1998) (internal quotations and citations omitted).  The Supreme Court has explained that "[a] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all."  Id.  In this case, plaintiffs' basis for injunctive relief against OFAC rests entirely on the outcome of their pending action for damages against HLF in Illinois.  Although plaintiffs argue that the Ungar plaintiffs recently filed restraining notices against several banks in possession of HLF property, these notices do not change the fact that OFAC has taken no action to harm any currently existing legal rights of

plaintiffs in HLF's property.  Thus, the complaint in this case is nothing more than a request for the Court to issue a declaratory judgment about the legality of hypothetical OFAC action upon speculative interests in HLF property that plaintiffs may obtain at some indeterminate time in the future.  Under well-established Article III jurisprudence concerning ripeness, such an action is manifestly improper.  See, e.g., Pfizer Inc. v. Shalala, 182 F.3d 975, 978-79 (D.C. Cir. 1999) (dismissing case on ripeness grounds where agency may never take action that impacts plaintiffs' legal rights)

With regard to the hardship plaintiffs may suffer if the Court withholds judicial review, plaintiffs concede in their Reply Memorandum that "there may be no 'immediate hardship' to plaintiffs today."[2]  See Reply Memo., p. 4.  This concession is unsurprising because the legal interests that plaintiffs attempt to assert in this case are now inchoate.  Absent a judgment against HLF, plaintiffs have no legal rights in HLF's property.  Therefore, plaintiffs cannot identify any OFAC action that will cause any harm to a legally protected interest of theirs.  Accordingly, plaintiffs' suit is not ripe and, therefore, this action should be dismissed.

### III. Plaintiffs Cannot State A Cause Of Action Under TRIA Or The Mandamus Act.

Even assuming that the Court has jurisdiction over this case, plaintiffs also have failed to identify a proper cause of action upon which to base their claims for injunctive relief.  In their Reply Memorandum, plaintiffs concede that they have not brought this action under the APA as a challenge to final agency action by OFAC.[3]  See Pls. Reply Memo., p. 6.  Instead, plaintiffs

---

[2] This concession alone dictates a denial of a preliminary injunction in this case.

[3] OFAC argued in its Memorandum in Support of its Motion to Dismiss that plaintiffs' claims could be cognizable only under the APA as a challenge to OFAC action because the APA is the only relevant statute that could provide plaintiffs with both a waiver of sovereign immunity

-7-

contend that their claims are brought under only two sources of law: "TRIA and the federal mandamus provision (28 U.S.C. § 1361)." See id. Plaintiffs, however, cannot state a claim for relief under either of these two statutory provisions.

First, section 201(a) of TRIA does not create a private right of action.[4] See, e.g., Sosa v. Alvarez-Machain, 124 S. Ct. 2739, 2763 (2004) ("[W]e are reluctant to infer intent to provide a private cause of action where the statute does not supply one expressly."). Section 201(a) of TRIA is a remedial statute that provides legal authority for persons with a judgment against a terrorist entity to execute their judgment against the blocked assets of a terrorist party as well as any agency or instrumentality of that terrorist party. Accordingly, TRIA simply enlarges the range of remedies available to persons with a judgments against a terrorist entity; it does not provide the federal courts with jurisdiction to entertain lawsuits and independent causes of action seeking to litigate questions of TRIA's later applicability, or seeking an advisory opinion concerning TRIA.[5] See Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671 (1950) (explaining that remedial statutes do not create independent causes of action, but merely widen

---

and a cause of action to challenge OFAC's action as unlawful. See Def. Memo., p. 19-22.

[4] Additionally, TRIA does not provide a waiver of sovereign immunity. See Lane v. Pena, 518 U.S. 187, 192 (1996) ("A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text."); FDIC v. Meyer, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."). The text of section 201(a) of TRIA does not contain the necessary unequivocal waiver.

[5] It is Federal Rule of Civil Procedure 69(a) that provides the legal authority to enforce a judgment for the payment of money. In such an post-judgment proceeding, a person with a judgment against a terrorist party may rely on TRIA to identify the funds that are subject to execution, but TRIA does not itself create the basis for legal action. Moreover, it is important to note that whatever rights TRIA imparts, those rights are imparted only to those who have "obtained a judgment against a terrorist party," TRIA, § 201(a); these plaintiffs have not met that condition and thus have no basis for claiming that TRIA entitles them to any relief.

the remedies that federal courts have at their disposal).

Second, plaintiffs cannot maintain a cause of action for a writ of mandamus against OFAC. The Mandamus Act provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. The Supreme Court has explained that the remedy of mandamus "is a drastic one, to be invoked only in extraordinary circumstances." Allied Chemical Corp. v. Daiflon, Inc., 449 U.S. 33, 34 (1980). Accordingly, mandamus is available only if: "(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to plaintiff." Northern States Power Co. v. U.S. Dep't of Energy, 128 F.3d 754, 758 (D.C. Cir. 1997) (quoting Council of and for the Blind of Delaware CTY. Valley, Inc. v. Regan, 709 F.2d 1521, 1533 (D.C. Cir. 1983) (en banc)).

Although plaintiffs claim that they are seeking mandamus relief against OFAC, the only basis for this relief is the conclusory statement that the Mandamus Act "requires OFAC personnel to carry out a duty owed to the plaintiffs." Pls. Reply Memo., p. 6. Plaintiffs, however, do not – and cannot – identify a nondiscretionary duty that OFAC owes them with respect to HLF's blocked property. See 13th Regional Corp. v. U.S. Dep't of Interior, 654 F.2d 758, 760 (D.C. Cir. 1980) ("[M]andamus will issue only where the duty to be performed is ministerial and the obligation to act peremptory, and plainly defined. The law must not only authorize the demanded action, but require it; the duty must be clear and indisputable."). TRIA makes no reference to any duty owed by OFAC to any party; indeed, TRIA makes no reference to OFAC at all, and plaintiffs identify no other provision of law that establishes that OFAC owes a

party in their position any duty.  Plaintiffs' failure to identify such a duty is unsurprising given the fact that the Executive's management of blocked assets is plainly discretionary.  See, e.g., Milena Ship Management Co. v. Newcomb, 995 F.2d 620, 622-23 (5th Cir. 1993) (explaining that OFAC has the discretionary authority to "block" and "unblock" assets pursuant to the Executive Orders promulgated under IEEPA).  Indeed, the discretionary nature of OFAC's authority is supported by its blocking regulations, which provide that blocked property cannot be transferred for any purpose except to the extent otherwise provided by law or unless licensed by OFAC.[6]  See 31 C.F.R. §§ 594.201(a), 594.202(e); 595.202(e).  Accordingly, plaintiffs cannot prevail on their claim for mandamus relief because OFAC does not owe them a ministerial or nondiscretionary duty with respect to HLF's blocked property.

### IV.     Plaintiffs Have Failed To Establish A Legal Basis For The Requested Injunctive And Declaratory Relief.

Even assuming that plaintiffs could state a cause of action, plaintiffs have not established a legal basis to enjoin OFAC "from releasing or disbursing any of the blocked assets of HLF to any person other than one who is seeking execution of a judgment entered against HLF."  See Complaint, p. 7.  The only legal support for the relief requested by plaintiffs is the allegation that OFAC will violate section 201(a) of TRIA if the blocked funds of a terrorist entity (e.g., HLF) are released to any party who does not have an in personam judgment against that terrorist entity (e.g., the Ungars).  Id. at ¶¶ 16, 21. This argument fails as a matter of law because the plain language of TRIA is not so limited.  TRIA unambiguously provides that persons with an in

---

[6] Thus, because neither TRIA nor the Mandamus Act provides the requisite authorization of law for plaintiffs in this case, there is no basis upon which the Court here could enjoin OFAC for exercising it authority with respect to HLF's blocked property.

personam judgment against a designated terrorist entity (e.g., Hamas or HLF) may satisfy their judgment by attaching the blocked assets of the terrorist entity against whom they have an in personam judgment or the blocked assets of "any agency or instrumentality of that terrorist party." 116 Stat. 2337, TRIA § 201(a).

Remarkably, plaintiffs make no effort to contest OFAC's construction of TRIA in their Reply Memorandum. Instead, plaintiffs continue to argue that the issue raised by their complaint is whether HLF is an "agency or instrumentality" of Hamas under TRIA. See Pls. Reply Memo., p 4.[7] As OFAC has explained, this issue is not before the Court because plaintiffs have merely requested a limiting construction of TRIA in an attempt to enjoin OFAC from releasing HLF's blocked assets to any party who has not obtained a final in personam judgment against HLF. The separate and distinct question of whether HLF is an "agency or instrumentality" of Hamas, as both a factual and legal matter, is a question for a court with jurisdiction over a post-judgment execution. See Fed. R. Civ. P. 69(a). This question need not be resolved in the present litigation because this is not a proceeding to execute a judgment against HLF's blocked property under TRIA.

## V.   An Injunction Against OFAC Is Not Needed To Preserve HLF's Assets For Criminal Forfeiture.

Finally, plaintiffs incorrectly contend that an injunction in this case is required to protect the government's interest in HLF's blocked assets for criminal forfeiture. On July 26, 2004, the

---

[7] According to plaintiffs, the issue raised by their complaint is "whether an American charity that has sent some of its funds to Hamas but has not been sued by the party that holds a default judgment against Hamas may be considered an 'agency' or 'instrumentality' of Hamas for purposes of Section 201(a) of the Terrorism Risk Insurance Act ('TRIA')." Pls. Reply Memo., p. 4.

government filed a forty-two court indictment against HLF in the Northern District of Texas, charging HLF with, <u>inter alia</u>, various money laundering offenses in violation of 18 U.S.C. § 1956.  <u>See</u> Pls. Reply Memo., Exhibit 1.  The indictment also contains a criminal forfeiture count, demanding that HLF forfeit $12,400,000 to the United States as a result of committing one or more money laundering offenses.  <u>See id.</u> at 37-38.

Although plaintiffs argue that an injunction in this case will further the government's interest in HLF's assets by preventing transfer of the assets to the Ungar plaintiffs, this Court need not be concerned with protecting the government's interest.  The United States District Court for the Northern District of Texas properly has jurisdiction over the criminal indictment involving HLF, and the government may take such action as it deems necessary in that court to protect its interest in the forfeiture of HLF's property.  <u>See</u> 18 U.S.C. § 982; 21 U.S.C. 853.

## CONCLUSION

For the foregoing reasons, OFAC's motion to dismiss should be granted and plaintiffs' motion for preliminary injunction should be denied.

Dated:  September 16, 2004                          Respectfully submitted,

                                                    PETER D. KEISLER
                                                    Assistant Attorney General

                                                    KENNETH L. WAINSTEIN
                                                    United States Attorney

                                                    VINCENT M. GARVEY
                                                    Deputy Branch Director

                                                    /S/ Andrew I. Warden
                                                    ANDREW I. WARDEN (IN #23840-49)
                                                    Trial Attorney

United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., NW, Room 6120
Washington, DC  20530
Tel.: (202) 616-5084
Fax: (202) 616-8460
e-mail:  andrew.warden@usdoj.gov